1

2

3

4       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
5                    AT TACOMA

6    DANIELLE R. ROMO,
                                              Case No. 2:17-cv-00745-TLF
7                        Plaintiff,
                                              ORDER REVERSING AND
8          v.                                 REMANDING DEFENDANT'S
                                              DECISION TO DENY BENEFITS
9    NANCY A. BERRYHILL, Deputy
     Commissioner of Social Security
10   Operations,

11                       Defendant.

12          Plaintiff has brought this matter for judicial review of defendant's denial of her

13   application for disability insurance benefits and supplemental security income benefits. The

14   parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C.

15   § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth

16   below, the Court reverses and remands defendant's decision to deny benefits for further

17   administrative proceedings.

18                          FACTUAL AND PROCEDURAL HISTORY

19          In June 2011, plaintiff filed an application for disability insurance benefits and

20   supplemental security income benefits alleging that she became disabled beginning April 1,

21   2009. Dkt. 9 Administrative Record (AR) 185-95. The claim was denied on initial administrative

22   review and on reconsideration. AR 127-141. A hearing was held on August 8, 2012 before ALJ

23   Glenn G. Meyers.AR 33-62, 142-169.

24

25

On September 14, 2012 the ALJ determined that plaintiff was not disabled. AR 8-25. Plaintiff's request for review was denied by the Appeals Council on January 17, 2014, AR 1-7. Plaintiff appealed on March 24, 2014, Case No. 14-419-BJR, Dkt. 1.

On January 5, 2015, this Court reversed the ALJ's decision and remanded plaintiff's claims for further administrative proceedings. AR 1066-83. Two hearings were held before ALJ Meyers at which plaintiff appeared and testified, as did vocational experts Leta Berkshire and Anne Jones. AR 958-1034 (2-25-16 and 10-20-16).

At the first step of the five-step review process, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). At the second step, the ALJ considers "the severity of the claimant's impairments. *Id.* If the evaluation process "continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the ALJ considers the claimant's residual functional capacity ("RFC") "in determining whether the claimant can still do past relevant work" at step four, "or make an adjustment to other work" at step five. *Id.*

In this case, on January 10, 2017 the ALJ determined that plaintiff was not disabled. AR 931-57. Step one was resolved in plaintiff's favor. AR 937. At step two, the ALJ found plaintiff had the following severe impairments: depressive disorder, generalized anxiety disorder, cocaine and heroin abuse (in recent remission), degenerative disc disease of the cervical spine, history of asthma, and obesity. AR 937. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 938. The ALJ then considered plaintiff's residual functional capacity

(RFC) and found at step four that she could not perform her past relevant work. The ALJ determined at step five that she could perform other jobs that exist in significant numbers in the national economy, and therefore she was not disabled. AR 940-948.

The Appeals Council did not assume jurisdiction of the matter, and the ALJ's decision became the Commissioner's final decision. Plaintiff appealed on May 12, 2017. Dkt. 1, 3; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in evaluating the medical opinion evidence; (2) in evaluating plaintiff's testimony; (3) in evaluating the lay witness evidence; and (4) in evaluating plaintiff's RFC. Dkt. 15. The Court agrees the ALJ erred, requiring reversal and remand for further administrative proceedings.

DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by

locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.      ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff challenges the ALJ's decision rejecting the opinions of: Kin L. Lui, M.D.; Chang B. Shin, M.D. and Michael Chun, M.D.; Phyllis Sanchez, Ph.D.; Steven Johansen, Ph.D.; Steven H. Wheeler, D.C.; Jesse Enell, ARNP; Michelle Kelly, MA, LMHCA; and Allen Tu, PA-C. Plaintiff also alleges the ALJ failed to properly evaluate the opinions of state agency non-examiners Patricia Kraft Ph.D., Sharon Underwood Ph.D., Michael L. Brown, Ph.D., Dan Donahue, Ph.D., and Olegario Ignacio, Jr, M.D. Dkt. 15 at 3-14. In addition, plaintiff argues the ALJ incorrectly found that plaintiff did not have post-traumatic stress disorder (PTSD) and chronic pain syndrome. Dkt. 15 at 7-8.

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996). It is error for an ALJ to reject a medical opinion, or assign it little weight, and "asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [the ALJ's] conclusion." *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Revels* 874 F.3d at 654. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id.* A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Lester,* 81 F.3d at 830-31; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*, 242 F.3d at 1149.

Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

    a.    <u>Dr. Lui, treating physician</u>

Dr. Lui has been providing treatment to plaintiff since July 2011. AR 598. Between 2011 and 2012, Dr. Lui found that plaintiff had a decreased range of motion in her cervical spine,

palpable tenderness and spasm[1] in her supraspinatus, infraspinatus, trapezius, and levator scapulae bilaterally. AR 598, 603, 608, 614, 627.

On January 27, 2012, Dr. Lui completed a Washington State Department of Social and Health Services Workfirst Documentation Request for Medical or Disability Condition (Workfirst Form) that listed eight questions. AR 640-42. When asked in question one about plaintiff's conditions or diagnosis, Dr. Lui identified two conditions: neck pain, and asthma. AR 640. In response to question two: "Does the condition(s) limit the person's ability to work" – Dr. Lui stated that plaintiff: "Cannot focus on task with neck pain and shortness of breath." *Id.* Dr. Lui was also asked whether plaintiff would be limited to specific time periods per week either working (question two), preparing to work (question three), or conducting a job search for work (question three), and, Dr. Lui opined that plaintiff would not be able to work, prepare for work, or search for work at all. *Id*.

In question four, Dr. Lui was asked: "Does this person have limitations with lifting and carrying?"; he opined that plaintiff could only lift 10 pounds maximum and frequently lift or carry such articles as files and small tools, which is defined as "sedentary work" on the Workfirst Form. AR 641. Dr. Lui also stated, in response to question eight, that plaintiff needed further evaluation or assessment regarding PTSD. *Id.* The ALJ gave Dr. Lui's January 2012 opinion little weight; the ALJ determined that Dr. Lui's opinions stated in response to the questions on the Workfirst Form were internally inconsistent and inconsistent with other treatment records from this time. AR 944-45.

---

[1] The word "spasm" is cut off in several of Dr. Lui's treatment notes.

1          1.    *Internal Inconsistencies*

2          The ALJ found that Dr. Lui's opinion that plaintiff could not work or participate in

3   educational classes at all, was inconsistent with his opinion that she was limited to the sedentary

4   level of physical exertion. AR 944-45. Plaintiff argues that as a treating physician, Dr. Lui had

5   knowledge of plaintiff's impairments and the ALJ had no basis for rejecting Dr. Lui's

6   conclusion.

7          An ALJ may reject a doctor's opinion that is inconsistent with the doctor's treatment

8   notes. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). There is no dispute that in one

9   portion of the Workfirst Form, Dr. Lui opined that plaintiff was unable to perform any hours of

10  work per week. AR 640-41. Dr. Lui also opined that plaintiff was limited to sedentary work

11  because she could not lift more than 10 pounds. *See* AR 944-45. These two opinions do not

12  necessarily conflict. The questions and responses were not made as an "either, or" proposition.

13         Dr. Lui stated in response to question two that plaintiff was not able to focus on tasks

14  because of neck pain and shortness of breath. AR 640. This is obviously a different reason for

15  not being able to work than the problem that is inquired about in question five – which is asking

16  about strength and ability to lift an object. These were two independent questions. Dr. Lui stated

17  that plaintiff had more than one medical condition: asthma and neck pain. AR 640-41. She also

18  had a diagnosis of PTSD that was being treated by a different medical provider than Dr. Lui, but

19  is mentioned in this same form. AR 641 (question eight). Because plaintiff was assessed by Dr.

20  Lui to have absolutely no ability to work because of her inability to focus – as a result of one or a

21  combination of these medical conditions, Dr. Lui's answer to each of the questions makes sense

22  and the answers are consistent with treatment records. Therefore, the Court finds that the ALJ

23  erred in finding that Dr. Lui's opinion was internally inconsistent.

24

25

2.    *Inconsistent with Objective Medical Evidence*

The ALJ also found that Dr. Lui's opinion was inconsistent with the other objective medical evidence in the record, including the opinions of Dr. Chun and Tania Martinez-Lemke, M.D. AR 944-45. The ALJ noted that Dr. Chun found that plaintiff did not have any radicular symptoms and that there was no indication for surgical intervention, but that she was at risk for developing chronic pain syndrome. AR 945 (citing AR 616). He also noted that Dr. Chun reported that plaintiff had demonstrated pain behavior, put forth limited effort, declined conservative treatment such as physical therapy, and had full strength, normal bulk and tone, intact reflexes, and intact sensation. AR 945 (citing AR 616-620).

The ALJ found that Dr. Lui's opinion that plaintiff is unable to focus due to her pain was contradicted by neurological findings from Dr. Chun that plaintiff presented with intact attention, concentration and memory, and that she was alert and oriented. AR 945 (citing AR 619). The ALJ also pointed to medical records from March 2011, in which Dr. Martinez-Lemke denied plaintiff a letter for disability secondary to her asthma, noting that plaintiff's symptoms were well-controlled. AR 945 (citing AR 583).

Plaintiff argues that the ALJ fails to mention that Dr. Chun also stated that plaintiff "surely does have degenerative changes in her neck by x-ray[,]" AR 616, and that Dr. Chun opined that plaintiff had developed chronic pain syndrome, which supports Dr. Lui's opinion about plaintiff's limitations, AR 945. Defendant contends that treatment notes from Drs. Chun and Martinez-Lemke support the ALJ's finding. Dkt. 19.

A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Although Dr. Chun did not provide an opinion on plaintiff's

functional limitations, some of Dr. Chun's treatment notes indicate rather benign findings contradictory to Dr. Lui's opinion that plaintiff is unable to work. AR 616, 619, 620 (e.g., no radicular symptoms, no indication for surgical intervention, demonstrated pain behavior and put forth limited effort, declined conservative treatment, lungs were clear to auscultation, intact memory, attention and concentration). Dr. Martinez-Lemke further found that plaintiff's asthma symptoms were well controlled, and that her disability was not secondary to her asthma, which conflicts with Dr. Lui's opinion.[2] AR 583. On the other hand, Dr. Chun's findings that plaintiff had degenerative changes in her neck and that "she is at high risk of developing chronic pain syndrome although I think she's essentially there," do tend to support Dr. Lui's findings and his opinion that plaintiff is unable to work due to her neck pain. AR 616.

Based on the foregoing, the record contains conflicting reports from at least three different physicians. Responsibility for resolving such conflicts in the medical evidence rests with the ALJ. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). Where, as here, "there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (internal citation omitted); *see also Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) ("[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."). Therefore, the Court finds that the ALJ did not err in finding that Dr. Lui's opinion was inconsistent with the objective medical evidence.

---

[2] Although plaintiff argues that defendant's citation to Dr. Martinez-Lemke's opinion is a *post hoc* rationale and that the ALJ did not state that he was rejecting Dr. Lui's opinion for this reason, Dkt. 20 at 3, the ALJ specifically cited to Dr. Martinez-Lemke's opinion in his decision, AR 945, and thus, the Court finds it appropriate to consider this reasoning.

3.    *Plaintiff's Smoking and Harmless Error*

Plaintiff does not address the ALJ's finding that Dr. Lui's opinion was contradicted by the fact that plaintiff developed pneumonia and bronchitis, but continued to smoke. AR 945 (citing AR 590, 717). However, the Court concludes that the ALJ provided one valid reason to reject Dr. Lui's opinion. Therefore, it is not necessary to address whether Dr. Lui's opinion was contradicted by plaintiff's smoking, and the ALJ's error finding Dr. Lui's opinion internally inconsistent is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115, 1117 (9th Cir. 2012) ("[H]armless error principles apply in the Social Security context."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error"); *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony).

b.    <u>Drs. Shin and Chun, treating neurologists</u>

Drs. Shin and Chun wrote treatment notes about plaintiff's medical conditions but did not provide any assessment of her functional limitations. AR 291-93, 616-620, 737. In June 2009, Dr. Shin diagnosed plaintiff with (1) acceleration/ deceleration injury with a cervical strain/sprain (but considering decreased sensation at the left upper extremity, a disk involvement or neuroforaminal stenosis or other structural lesion needed to be ruled out); (2) cervicogenic headache; (3) lumbago with posterior thigh pain (rule out disk involvement or spinal stenosis); and (4) left ankle pain and an exacerbation of right ankle pain due to a sprain; Dr. Shin recommended MRIs, medication, and other follow-up treatment. AR 292-93.

On October 20, 2009, Dr. Shin diagnosed plaintiff with (1) cervical strain/sprain; (2) mild multilevel degenerative changes worse at C6-7 with mild to moderate spinal canal narrowing; (3)

cervicogenic headache, intermittent; (4) lumbar strain/sprain responding well with DNT; (5) mild

broad right paracentral disk protrusion at L5-S1; and (6) bilateral ankle pain. AR 737. Dr. Shin

noted that considering plaintiff's minimal improvement since the April 2009 accident, her

prognosis was guarded and it would probably take another 18 months for her to achieve

maximum medical improvement. AR 737.

In November 2011, Dr. Chun found that plaintiff did not have any radicular symptoms,

had degenerative changes in her neck, and was at high risk for developing chronic pain

syndrome. AR 616. He thought physical therapy would be beneficial, but plaintiff did not want

to do that at this point. AR 616. Dr. Chun concluded that her prognosis was poor. AR 616.

Aside from finding that Dr. Lui's opinion was inconsistent with Dr. Chun's treatment

notes, the ALJ did not discuss the findings of Drs. Chun or Shin. *See* AR 944-45. Plaintiff

contends that the ALJ's failure to discuss these findings was erroneous. Dkt. 15. Defendant

argues that because Drs. Shin and Chun did not opine as to any functional limitations, the ALJ

did not fail to account for plaintiff's impairments. Dkt. 19.

This Court's previous decision, AR 1074-1076, determined that the ALJ did not err

concerning the opinions of Dr. Shin and Dr. Chun. In a Social Security appeal, the law of the

case doctrine prohibits a court from considering an issue that has already been decided by the

same court, or by a higher court in the same case. *Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir.

2016). Because this Court previously decided that the ALJ did not err concerning the opinions of

Drs. Chun and Shin, this issue will not be re-evaluated in this appeal.

c.      PTSD and chronic pain syndrome

The ALJ found that "there is no definitive diagnosis from an acceptable medical source to

establish [a PTSD diagnosis]." AR 938. The ALJ found that the symptoms related to this

impairment would be better addressed by the diagnoses of depressive disorder, generalized anxiety disorder, and history of substance abuse, which were found to be severe impairments. AR 938. The ALJ also did not qualify plaintiff's chronic pain syndrome as a severe impairment. *Id.*

Plaintiff argues that Dr. Sanchez, Romeo Puzon, M.D., and Kimo C. Hirayama, M.D. all diagnosed her with PTSD, that Dr. Johansen offered a provisional PTSD diagnosis. Dkt. 15 at 8-9 (citing AR 1566, 1573, 1604, 1676), and that Drs. Chun and Hirayama diagnosed plaintiff with chronic pain syndrome. AR 616, 1676. Plaintiff contends the ALJ's failure to resolve this discrepancy tainted the ALJ's analysis of her testimony. Dkt. 15 at 8-9.

Even if the ALJ erred in mischaracterizing plaintiff's PTSD and chronic pain syndrome diagnosis, any such error was harmless. *See Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Molina,* 674 F.3d at 1115). Step two was resolved in plaintiff's favor and cannot be the basis for remand. *See id.* Specifically, the ALJ found that plaintiff had one or more medically determinable severe impairments including depressive disorder, generalized anxiety disorder, and history of substance abuse, which the ALJ found better addressed her PTSD, and continued with the sequential disability evaluation process. *See* AR 937.

d.     Dr. Sanchez, examining psychologist

Dr. Sanchez examined plaintiff in 2008, prior to plaintiff's alleged onset date of April 1, 2009. AR 65, 1565-1570. Dr. Sanchez diagnosed plaintiff with PTSD, depression and crack addiction. AR 1566. She observed that plaintiff was guarded, scattered and defensive, and had marked limitations in her ability to exercise judgment and make decisions, respond appropriately to and tolerate the pressures and expectations of normal work settings. AR 1567.

1    The ALJ gave Dr. Sanchez's opinion no weight because it was "completed well outside

2    of the time period at issue." AR 945. Plaintiff argues that Dr. Sanchez's opinion only predates

3    the relevant time period by 11 months, and shows that plaintiff's PTSD has been present since

4    May 2008. "Medical opinions that predate the alleged onset of disability are of limited

5    relevance." *Carmickle*, 533 F.3d at 1165; *See Brown v. Comm'r of Soc. Sec. Admin.,* 552 Fed.

6    Appx. 688, 689 (9th Cir. 2013) (unpublished) (holding that the ALJ did not err by rejecting

7    opinions from prior benefits applications in favor of "more recent" opinions). Notably, Dr.

8    Sanchez's opinion relates to a period in which plaintiff acknowledges he was not disabled. *See*

9    AR 65, 1565-1570 (Dr. Sanchez examined plaintiff prior to plaintiff's alleged onset date of April

10   1, 2009). Therefore, the ALJ properly relied on the fact that Dr. Sanchez's opinion predated

11   plaintiff's alleged onset date as a reason for assigning no weight to her opinion. The ALJ also

12   cites to and relies on more recent medical opinions, such as that of Dr. Johansen from March

13   2011, in making his determination, which indicates less severe limitations than found by Dr.

14   Sanchez. *See* AR 945; *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing

15   *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (Because the "most recent medical reports

16   are highly probative," the ALJ did not err in giving greater weight to the more contemporaneous

17   medical opinions of record.).

18            e.       Dr. Johansen, examining psychologist

19            Dr. Johansen opined that plaintiff had moderate limitations in her ability to understand,

20   remember and persist in tasks by following complex instructions of three or more steps, learn

21   new tasks, perform routine tasks without undue supervision, communicate effectively in a work

22   setting with limited public contact, and maintain appropriate behavior in a work setting. AR

23   1574. The ALJ assigned significant weight to Dr. Johansen's opinion, finding that it was

24

25

consistent with plaintiff's RFC, Dr. Johansen's own observations, and plaintiff's reported

activities, including her ability to complete self-care tasks, shop for groceries, prepare meals, do

household chores, use public transportation, and manage her own finances. AR 945.

Plaintiff contends that the ALJ's finding that Dr. Johansen's opinion was consistent with

her RFC is legally erroneous, but does not challenge the ALJ's two remaining reasons for giving

Dr. Johansen's opinion significant weight. Dkt. 15. Defendant argues that the ALJ's conclusion

was rational and the limitations found the in RFC account for Dr. Johansen's opinion. Dkt. 19.

The Court finds any error committed by the ALJ here was harmless.

The ALJ must consider medical evidence in assessing the RFC, and cannot then discredit

such evidence because it is inconsistent with that RFC. *See Laborin v. Berryhill*, 867 F.3d 1151,

1153-54 (9th Cir. 2017). The Ninth Circuit has held that if an ALJ does this, the ALJ thereby

"indicates that he or she did not properly 'incorporate a claimant's testimony regarding subjective

symptoms and pain into the RFC finding, as [he or she] is required to do.' "*Laborin,* 867 F.3d at

1154 (citing *Trevizo*, 862 F.3d at 1000 n.6 and *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.

2015) (holding that this boilerplate language conflicts with the regulations and rulings)). "This

practice 'inverts the responsibility of an ALJ, which is first to determine the medical

impairments of a claimant based on the record and the claimant's credible symptom testimony

and only *then* to determine the claimant's RFC.' " *Laborin,* 867 F.3d at 1154 (quoting *Trevizo*,

862 F.3d at 1000 n.6.) (emphasis original). Therefore, this was not a legally valid reason for the

ALJ, in deciding plaintiff's case, to assign great weight to Dr. Johansen's opinion.

Nevertheless, the ALJ provided at least one other valid reason for giving great weight to

Dr. Johansen's opinion, not challenged by plaintiff, and so the Court finds that any such error

was harmless. *Carmickle*, 533 F.3d at 1162 ("the relevant inquiry in this context is . . . whether

the ALJ's decision remains legally valid, despite such error"); *Batson*, 359 F.3d at 1197 (finding ALJ's error harmless because the ALJ provided other legally valid reasons for discrediting the plaintiff's testimony).

f. Mr. Enell, advanced registered nurse practitioner (ARNP)

ARNP Enell completed a Workfirst Form and opined that plaintiff's psychiatric conditions limited her ability to work around others, follow tasks, and complete projects that required sustain attention. AR 637. He also opined that plaintiff could not participate in any work activities. AR 637.

The ALJ accounted for ARNP Enell's opinion that plaintiff has a limited ability to work around others, to follow tasks, and to complete projects that required sustained concentration in the RFC (AR 940). He gave little weight to ARNP Enell's conclusion that plaintiff was unable to work because it was inconsistent with the treatment records. AR 944. The ALJ also noted that plaintiff reported improvement with her symptoms with medication. AR 944. In addition, the ALJ noted that clinical findings did not support a finding that plaintiff is unable to work. These include ARNP Enell's findings that plaintiff was cooperative, had an unremarkable physical appearance, had normal speech and effect, maintained appropriate eye contact, had intact thoughts, memory and concentration, and was only slightly anxious related to situational stressors, AR 645-46, 944. Moreover, the ALJ noted that Dr. Chun found that plaintiff had intact attention, concentration, and memory and was alert and oriented. AR 944 (citing AR 617-19).

Plaintiff argues that the ALJ erred by failing to acknowledge the mental health treatment notes and clinical findings from Michael Gstohl, LMHC, MHP, and Ernesto Vargas, B.A., which support Mr. Enell's opinion. Plaintiff does not challenge the ALJ's finding that Mr. Enell's treatment notes were inconsistent with his opinion of the objective medical evidence (e.g. Dr.

Chun).

Mr. Vargas reported that plaintiff presented with somewhat scattered thoughts, appeared distressed, and was agitated. AR 427, 432, 434-35, 648, 674. Mr. Gstohl reported that plaintiff's mood/affect was flat/blunted and depressed, remote and recent memory were limited, and her behavior was distractible and withdrawn/passive. AR 472. For example, plaintiff argues that Mr. Gstohl and Mr. Vargas' treatment notes support Mr. Enell's opinion and that the ALJ failed to discuss their clinical findings, however, these findings do not address any functional limitations and are therefore not probative to the ALJ's determination of plaintiff's RFC. *Vincent*, 739 F.2d at 1394-95 (an ALJ is not required to discuss every piece of medical evidence, but only to explain why significant, probative evidence has been rejected). Plaintiff has also not shown that Mr. Gstohl and Mr. Vargas' clinical findings are inconsistent with the ALJ's RFC assessment, and therefore must be discussed. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). Thus, the ALJ did not err by failing to discuss the mental health treatment notes of Mr. Vargas and/or Mr. Gstohl.

Moreover, plaintiff does not challenge the ALJ's reason for rejecting Mr. Enell's opinion, i.e., that it was inconsistent with Mr. Enell's own treatment records and the objective medical evidence in the record. *See* Dkt. 15; *Turner v. Commissioner of Social Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (an ALJ may disregard opinion evidence provided by "other sources," if the ALJ "gives reasons germane to each witness for doing so") (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); 20 C.F.R. § 404.1513 (d) (nurse practitioners are considered other medical sources); *Bayliss,* 427 F.3d at 1216 (An ALJ may consider a medical opinion's consistency with the doctor's own treatment notes.); *Morgan,* 169 F.3d at 601 (A physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the

record.). The ALJ further noted Dr. Chun's finding that plaintiff presented with intact attention, concentration and memory and was alert and oriented. AR 944. Therefore, the ALJ provided germane reasons for rejecting Mr. Enell's opinion that plaintiff was unable to work.

### g. Ms. Kelly, mental health counselor

In September 2016, Ms. Kelly completed a medical source statement. AR 1647-49. Ms. Kelly opined that since 2011, plaintiff had moderate to marked cognitive, social, and adaptive limitations. AR 1647-48. The ALJ gave Ms. Kelly's opinion little weight because: (1) Ms. Kelly did not provide any explanation for the extreme limitations; (2) Ms. Kelly had only seen plaintiff for five months in 2016, and it was not clear how she could assess plaintiff's functioning over a five year period; (3) Ms. Kelly failed to indicate whether she was factoring in plaintiff's substance abuse, which likely affected her functioning; and (4) treatment records from April and June 2016 show that plaintiff reported improvement with her depression with medication and sobriety. AR 943.

Plaintiff argues that Ms. Kelly's opinion is consistent with the findings and opinions of Mr. Gstohl, Mr. Vargas, Mr. Enell, Dr. Sanchez, and Dr. Johansen. Plaintiff also contends that if the ALJ required further clarity on some of the issues, the ALJ should have developed the record by obtaining a psychological consultative evaluation of plaintiff.

Because the ALJ provided other, germane reasons to discount Ms. Kelly's opinion, not challenged by plaintiff, the Court finds that any error with respect to consistency with other medical opinion evidence is harmless. *See* AR 943; *Carmickle,* 533 F.3d at 1162 ("the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error").

### h. Dr. Wheeler, chiropractor

Dr. Wheeler opined that plaintiff should be excused from work from April 2009 to June 2009. AR 298-301. The ALJ gave Dr. Wheeler's opinion little weight, as it did not establish that plaintiff was unable to work on a continuous 12-month basis. AR 945. Plaintiff argues that Dr. Wheeler's opinion, considered along with the other medical evidence, shows that plaintiff had continuously been unable to work since April 2009. Dkt. 15. Defendant argues that this was a germane reason to discount Dr. Wheeler's opinion. Dkt. 19.

An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so.'" *Turner,* 613 F.3d at 1224 (quoting *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1513 (d) (chiropractors are considered other medical sources). Further, an ALJ may reject opinions of temporary limitations because they have little bearing on a claimant's long-term functioning. *Carmickle*, 533 F.3d at 1165. (affirming the ALJ's decision to give little weight to a treating physician's opined limitation, when the physician gave the plaintiff a two-week excuse from work due to degenerative disc disease, and two months later released the plaintiff to return to full-time work).*Id.*

Here, because Dr. Wheeler indicated the time loss authorization for his opined limitations was from April 16, 2009 to June 16, 2009, a period of two months, AR 298-301, substantial evidence in the record supports the ALJ's finding that Dr. Wheeler's opined restrictions and limitations were temporary. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (a claimant must show he or she has a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). Thus, this was a germane reason to discount Dr. Wheeler's opinion.

i.  Mr. Tu, physician's assistant

In September 2014, Mr. Tu opined that plaintiff was limited to light work for six months. AR 1550. Mr. Tu found that plaintiff's chronic obstructive pulmonary disease (COPD) had a marked effect (defined as very significant interference) on her ability to walk, lift, and carry, and that her ankle pain had a moderate affect (defined as significant interference) on the same activities. AR 1549. The ALJ gave Mr. Tu's opinion great weight in terms of the exertional limitations to address plaintiff's respiratory issues, however, the ALJ found that there was no evidence that plaintiff's mild degenerative joint disease in her right ankle caused significant vocational limitations for at least 12 continuous months. AR 943-44.

Plaintiff argues that the ALJ's finding that there was no evidence that plaintiff's mild degenerative joint disease caused significant vocational limitations for at least 12 months was incorrect, because in April and August 2016, Dr. Hirayama found that plaintiff had chronic left ankle plain. Dkt. 15 at 13 (citing AR 1544, 1676-77). Defendant argues that the ALJ fully accounted for the limitation to light work that Mr. Tu assessed, and that plaintiff does not detail what other limitations follow from Dr. Hirayama's opinion. Dkt. 19 at 12 (citing AR 940, 1550). Plaintiff is correct that Dr. Hirayama found that plaintiff chronic pain in her left ankle. AR 1676-77.[3]

However, as defendant points out, plaintiff has not cited to any objective evidence in the record establishing that this evidence shows that plaintiff is limited to less than light work. *See* AR 1676-77.  Dr. Hirayama did not find that plaintiff was functionally limited in any way or make any observations or state an opinion related to plaintiff's ability to obtain or maintain employment including her ability to lift, use her extremities, sit, stand, walk or engage in skilled or unskilled tasks. *See* AR 1676-77. Therefore, Dr. Hirayama's opinion does not reflect that

---

[3] Plaintiff also cites to AR 1544, however, that citations refers to a treatment note from Dr. Lui.

plaintiff's ankle pain caused significant vocational limitations or rendered her unable to work on a continuous 12-month basis. *See Lewis v. Astrue,* 498 F.3d at 911. As a result, plaintiff has failed to show that the ALJ erred in rejecting Mr. Tu's opinion.

<u>j. State agency non-examining psychologists: Drs. Kraft, Underwood, Brown and Donahue; and state agency non-examining physician, Dr. Ignacio</u>

Drs. Kraft and Underwood opined that plaintiff would be able to perform simple, routine tasks with limited complex tasks and work in a setting with limited public interaction, and that she would be capable of adequate concentration, persistence, and pace. AR 65-76, 77-88, 91-103, 104-116. Drs. Brown and Donahue opined that plaintiff would be limited to simple, routine tasks, with no contact with the public and only occasional contact with supervisors and coworkers. AR 1096-1106, 1108-1121. The ALJ gave great weight to the opinions of Drs. Kraft, Underwood, Brown and Donahue, as they were consistent with the opinion of Dr. Johansen who assessed plaintiff with no more than moderate limitations. AR 945-46.

Dr. Ignacio opined that plaintiff would be limited to work at the light exertional level with additional manipulative, postural, and environmental limitations. AR 1108-1121. The ALJ did not assign weight to Dr. Ignacio's opinion, but stated that it "more closely aligns with the objective evidence of plaintiff's asthmatic symptoms and neck pain[.]" AR 946. Plaintiff interprets the ALJ's statement to give great weight to Dr. Ignacio's opinion. Dkt. 15 at 13.

Plaintiff argues that the ALJ erred as none of these non-examining sources reviewed any evidence beyond October 2014, nor did they review plaintiff's testimony. Dkt. 15 at 13. Plaintiff contends that their opinions are entitled to little weight. *Id.* Plaintiff does not, however, argue that the opinions of these non-examining sources were inconsistent with the record. *See* Dkt. 15. Defendant argues that there is no requirement or standard for the quality of reasoning when weighing evidence, other than the rule that the ALJ must give legally sufficient reasons for

rejecting medical opinions and providing an explanation for his decision. Dkt. 19 at 12 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to that of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in the original). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan,* 242 F.3d at 1149.

Contrary to plaintiff's contention, Drs. Kraft, Underwood, Brown, Donahue and Ignacio cited to objective findings, plaintiff's dubious credibility and various medical opinions in the record to adequately support their opinions. For example, Drs. Kraft and Underwood cited to Dr. Johansen's opinion as support. AR 67, 79, 82, 94, 97, 107, 110. Dr. Ignacio cited to the examinations and opinion of Mr. Tu as support for his opinion. AR 1110, 1115. And these non-examining sources reviewed plaintiff's testimony and her functional report. Drs. Underwood and Kraft found that discrepancies in plaintiff's statements and her activities of daily living made her only partially credible. AR 68, 79-80, 82, 97, 110. Drs. Brown, Donahue and Ignacio also found that plaintiff was only partially credible, noting plaintiff was not compliant with her medication, her impairments would not cause permanent disability and her psychosis was not consistent with the symptoms. AR 1101, 1113, 1115. Therefore, their opinions were not brief, conclusory or inadequately supported by clinical findings. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("[T]he ALJ need not accept the opinion of any physician, including

a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings.") (internal quotation marks omitted).

In addition, although plaintiff argues that these nonexamining sources failed to review

evidence beyond October 2014, this does not establish that their opinions are entitled to less

weight. *See Tonapetyan,* 242 F.3d at 1149 (internal citation omitted). The Court also notes that

the records beyond October 2014 did not exist at the time Drs. Kraft, Underwood, Brown,

Donahue, and Ignacio completed their review.  *See* AR 65-88 (Dr. Kraft's opinion dated October

2011); 91-116 (Dr. Underwood's opinion dated December 2011); 1096-1106 (Dr. Brown's

opinion dated May 2014); 1108-1121 (Drs. Ignacio and Donahue's opinions dated October

2014). Moreover, plaintiff does not point to any evidence indicating that evidence beyond

October 2014, would show that the opinions of Drs. Kraft, Underwood, Brown, Donahue and

Ignacio are in conflict with observations, opinions and conclusions of other medical sources

during that period.

Accordingly, the Court finds that the opinions of Drs. Kraft, Underwood, Brown,

Donahue and Ignacio are supported by substantial evidence in the record, and that the ALJ did

not err in relying on these opinions. *See Andrews,* 53 F.3d at 1041 (reports of a nonexamining

advisor … may serve as substantial evidence when they are supported by other evidence in the

record and consistent with it").

II.    Plaintiff's Testimony Concerning Self-Reported Symptoms

Plaintiff asserted that she experienced limitations from PTSD, asthma, severe depression,

degenerative disc disease in her neck, and memory loss. AR 218. Plaintiff stated that her

impairments affected her ability to do physical activities such as: lifting, squatting, bending,

standing, reaching, walking and kneeling. AR 252. Plaintiff also testified that she continues to

have pain in her neck, particularly on the left side, and that she cannot lift more than a gallon of

milk. AR 975-76, 1019. Plaintiff testified that she is unable to sit for long periods of time due to her neck pain and bad headaches four times per week. AR 975-76.

In addition, plaintiff testified that she has difficulties with memory, concentration, complete tasks and understand/follow instructions. *Id*. She stated that she has significant memory loss, and panic attacks. AR 976-78. The ALJ determined that plaintiff's testimony concerning self-reported symptoms was not consistent with the medical evidence and other evidence in the record; and the ALJ found that plaintiff's credibility was doubtful because she failed to seek treatment. AR 941-42.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Allen* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan,* 242 F.3d at 1148.

To reject a claimant's testimony regarding self-reported symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834. The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill*, 12 F.3d at 918. Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (citation omitted). The evidence as a whole must support a finding of malingering. *See Carmickle,* 533 F.3d at 1160 n.1; *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider a claimant's prior

inconsistent statements concerning symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

        a.      <u>Lack of Treatment and Complaints</u>

The ALJ found that although plaintiff testified at the hearing that she had an increase in headaches, there was no evidence of treatment for these symptoms in the record. AR 942. Moreover, the ALJ found that plaintiff did not report pain associated with her cervical spine. AR 942. Plaintiff argues that the ALJ erred by failing to take into account plaintiff's reasons for limited treatment, including periods of homelessness and her inability to tolerate an MRI. Dkt. 15 at 15.

An ALJ may properly rely on evidence which shows "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to discount a plaintiff's statements. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see* SSR 96-7p 1996 SSR LEXIS 4, *21-22 ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . . . and there are no good reasons for this failure"). Further, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638.

However, lack of medical treatment due to an inability to afford medical treatment does not support an adverse credibility determination. *Orn,* 495 F.3d at 638. Moreover, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989); *see also Nguyen,* 100 F.3d at 1465.

The ALJ found that plaintiff did not complain of headaches, failed to seek treatment,

and "[r]ecent treatment records also indicate that the claimant did not report pain associated with her cervical spine[.]" AR 942 (citing AR 1650-1687 (treatment notes from April 2016 to September 2016)). First, with respect to lack of headache complaints, the record reflects that in 2009, Dr. Shin noted neck pain with paresthesia at plaintiff's left upper extremity associated with headaches and diagnosed her with cervicogenic headaches. AR 291, 292-93, 737. Thus, there is evidence in the record that plaintiff complained of headaches.

Moreover, the ALJ failed to take into account plaintiff's purported reasons for failing to seek treatment. In April 2016 plaintiff reported that she had not seen a doctor in a long time due to her history of homelessness, memory loss and substance abuse. AR 1662 (plaintiff lost referrals for MRI), 1674, 1680 (plaintiff reported that she was seen at Compass Health in Everett for three years, but she couldn't remember how long ago she stopped due to her memory loss). Treatment notes from July 2016 indicate that plaintiff went for an MRI of her "brainstem at CDI" but developed intense claustrophobia and was unable to complete the exam. AR 1658-59. Plaintiff requested the MRI be completed under complete sedation. AR 1658. At the hearing, plaintiff testified that she was homeless and not able to take care of herself. AR 972.

The Court therefore finds that the ALJ erred by failing to consider plaintiff's reasons for not seeking treatment. *See Orn,* 495 F.3d at 638; *Nguyen,* 100 F.3d at 1465; *Blankenship,* 874 F.2d at 1124. In addition, the record reflects that plaintiff repeatedly reported neck pain between April and September 2016. AR 1650-1687.  In April 2016, plaintiff reported a history of neck pain since 2009. AR 1668, 1671. Plaintiff reported that she had chiropractic treatment but continued to have neck pain. AR 1668. In August 2016 Dr. Hirayama, again noted that plaintiff had chronic neck pain. AR 1655.

Thus, after reviewing the record, the Court finds there is not substantial evidence supporting the ALJ's decision to discount plaintiff's testimony based on an alleged lack of neck pain, headaches, or treatment in 2016.

b.    Objective Medical Evidence

Determining a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011). However, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair*, 885 F.2d at 601. The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

As discussed above, the other reason the ALJ provided for discounting plaintiff's credibility is not legally sufficient. The ALJ thus cannot rely solely on inconsistency with the objective medical evidence to support his credibility determination.

c.    Harmless Error

Plaintiff testified to greater limitations than the limitations included in the RFC determination. Plaintiff testified that she cannot lift more than a gallon of milk, has limitations in lifting, squatting, bending, standing, reaching, walking, and kneeling, cannot sit for long periods of time, and difficulties with memory, concentration, completing tasks, and understanding/following instructions. AR 975-78, 1019. The ALJ determined that plaintiff has the RFC to perform light work, which involves lifting no more than 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds and "sitting most of the time". AR 940;

20 C.F.R. §§ 404.1567(b), 416.967(b). If the ALJ properly considers plaintiff's subjective symptom testimony, it would follow that the ALJ may include additional limitations in the RFC. The ALJ's error with respect to plaintiff's credibility is not harmless and requires reversal. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless if it is not prejudicial to the claimant or inconsequential to the ALJ's ultimate nondisability determination).

III.     The ALJ's Evaluation of the Lay Witness Evidence

Plaintiff argues the ALJ erred in rejecting the lay witness testimony of Social Security Administration ("SSA") interviewer L. Fry and Washington State Department of Health and Human Services ("DSHS") employees Barbara Hendricks and Natalie Lehl. Dkt. 15 at 16-17. Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

a.     Ms. Fry, SSA interviewer

Ms. Fry indicated that plaintiff had difficulties with concentration, sitting and answering questions. AR 212. Ms. Fry observed that plaintiff was "very weepy and very sad throughout the interview." *Id.* Ms. Fry reported that plaintiff was trying to concentrate, but could not and kept apologizing that she could not remember. *Id.* The ALJ gave little weight to Ms. Fry's observation reasoning that Ms. Fry only met with plaintiff once, when she applied for social security benefits. AR 947. The ALJ noted that this was probably a stressful situation that likely exacerbated

plaintiff's emotional response, and that plaintiff had been under the influence of drugs at times. AR 947.

Defendant concedes that there is no evidence that plaintiff was under the influence of drugs during her meeting with Ms. Fry. Dkt. 19 at 13-14. However, the ALJ also found that Ms. Fry saw plaintiff on a one-time basis. AR 947. This was a germane reason to reject Ms. Fry's opinion. *See Perez v. Berryhill,* 2017 WL 522824, at *6 (C.D. Cal. Feb. 7, 2017) (vocational counselor's one-time observation was a germane reason to reject opinion); *Todd v. Colvin,* 2014 WL 5341931, at *7 (D. Mont. Oct. 20, 2014) (occupational therapist's limited observations of the plaintiff was a germane reason to reject therapist's opinion).

Moreover, even if the ALJ had erred in rejecting Ms. Fry's opinion, Ms. Fry did not describe any limitations not already described by plaintiff. Therefore, plaintiff has not shown harmful error. *See Molina*, 674 F.3d at 1117 (citing *Valentine*, 574 F.3d at 694).

b.   <u>Ms. Hendricks and Ms. Lehl, DSHS employees</u>

During a visit to complete a disability application, Ms. Hendricks observed that plaintiff was overweight, wore dirty clothing, flushed, needed to take two breaks, was highly anxious and emotional, appeared close to crying, and could not remember doctors that she had seen, dates she had worked, or what hand she used at a prior job. AR 1252. Ms. Lehl made similar observations during a meeting with plaintiff, e.g., that plaintiff: was frazzled, asked to use the restroom, had a difficult time staying on topic, was emotional, was tearful, agitated quickly, could not remember dates and times, struggled doing more than one task at once, had a difficult time staying still, moved around a lot, and had a swollen ankle.  AR 1267.

The ALJ did not address Ms. Hendricks or Ms. Lehl's observations. *See AR 947*. This was error. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability

to work.").

However, plaintiff does not show how the alleged error affected the outcome of the ALJ's analysis. *See Molina*, 674 F.3d at 1111 (internal citation omitted) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.' ")). The issue is whether there are functional limitations as a result of Ms. Lehl and Ms. Hendricks' observations that support a finding of disability.

Both Ms. Lehl and Ms. Hendricks made numerous observations about plaintiff's physical and mental state at the time of their meetings, but plaintiff has not cited to any objective evidence in the record establishing that this evidence shows that she is limited to less than light work. In fact, Ms. Lehl and Ms. Hendricks' testimony was consistent with the RFC, which incorporated limitations in finding that plaintiff was restricted to incidental, superficial contact with public and capable of working in proximity to, but not in coordination with co-workers. AR 940. The RFC also limited plaintiff to occasional contact with supervisors. *Id.*

As a result, plaintiff fails to offer any explanation or cite to any evidence in the record to establish that the opinions of Ms. Lehl or Ms. Hendricks would impair her ability to function under the limitations included the ALJ's RFC. It is plaintiff's duty to show how the opinions of Ms. Lehl and Ms. Hendricks indicate that she was unable to perform work duties. As such, any error in the ALJ's assessment of her RFC was harmless. *See Lewis v. Astrue,* 498 F.3d at 91; *Garland v. Astrue*, 2010 WL 454492, at *4 (C.D. Cal. Feb. 8, 2010) (lay evidence reflected that plaintiff was afraid of people, did not always understand what was said to him, must repeatedly be told what to do, and does not stay on task, but any error in failing to include such evidence was harmless because the ALJ incorporated the limitations in finding that plaintiff was limited to performing habituated tasks with no public contact).

IV.    RFC, Hypothetical Questions and Step Five Findings

Because the Court already has concluded that the ALJ erred in reviewing plaintiff's subjective symptom testimony and that this matter should be reversed and remanded for further consideration, *see supra*, section II, the remainder of the sequential disability evaluation process, including step five, will need to be assessed anew on remand.

V.    Remedy

Plaintiff argues that this case should be remanded for an award of benefits, or in the alternative, remanded for further administrative proceedings. Dkt. 15 at 18-19. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels,* 874 F.3d at 668.

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, 874 F.3d at 668.

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting plaintiff's subjective symptom testimony. Accordingly, issues remain regarding the evidence in the record concerning plaintiff's functional limitations, and therefore serious doubt remains as to whether plaintiff is in fact disabled. Accordingly, remand for further consideration of those issues is warranted. Specifically, on remand the Commissioner shall re-evaluate plaintiff's subjective symptom testimony.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

Dated this 8th day of August, 2018.


*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge